BALDWIN ENTERPRISES, INC., PLAINTIFF-APPELLANT, v. TOWN OF WARWICK, NEW YORK, A MUNICIPAL CORPORATION OF THE STATE OF NEW YORK, VINCENT BROWN, SUPERVISOR AND THE BOARD OF THE TOWN OF WARWICK, JOHN FILIPOWSKI, JEROME FINE, GENE BARKER, GARY JUNDSBY, E. LEMIN, JIM LINTON, PETER MASKER, GEORGE T. RUSSELL, SCOTT RUSSELL, R. SCHERUERMANN, S.R. VAN DRYER, AND JAMES WATCH AND JOHN DOES #1-#10, NAMES BEING FICTITIOUS, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 7, 1988—Decided July 20, 1988.

Before Judges R.S. COHEN and LANDAU.

*Morris, Downing & Sherred,* attorneys for appellant (*David L. Johnson,* of counsel and on the brief).

*Hook, Torack & Smith,* attorneys for respondents (*Edward V. Torack,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff-appellant Baldwin Enterprises, Inc. (Baldwin) is a New Jersey corporation which operates a sand and gravel quarry in Sussex County. Following a telephone inquiry from the superintendent of highways in the town of Warwick, New York (Warwick) Baldwin quoted a price for road sand/grits. Thereafter in December 1985 and early January 1986, several oral orders for road sand or grits were issued by Warwick based on the quoted price; the materials were picked up by

Warwick trucks at the quarry in Sussex County; bills were issued from Baldwin and were apparently paid. Later that winter, in January and early February, several subsequent orders for similar materials, each less than $5,000, were handled in the same manner except for payment. Accumulated invoices for the subsequent orders totalled $13,398.

Through its attorney, defendant-respondent Warwick refused payment, asserting that the transactions violated Section 103 of the New York General Municipal Law which requires competitive bidding for public contracts which exceed $5,000.

There is no dispute that the materials were provided or that the quantity and quality were satisfactory. Baldwin sued Warwick and various Warwick public officials and employees, in the Law Division of the Superior Court, Sussex County. An answer was filed on behalf of Warwick and 11 of the officials and employees. It denied liability, but asserted no jurisdictional defenses.

On Baldwin's motion for summary judgment, the trial judge, *sua sponte*, raised an issue of jurisdiction. Briefs were submitted on the issue and the matter was subsequently dismissed when the trial judge found "that the court is without jurisdiction ..." Review of the colloquy constituting the trial judge's opinion towards the conclusion of the oral argument discloses that the trial judge primarily relied upon our opinion in *Liquid Carbonic Corp. v. City of New York*, 150 *N.J.Super.* 119 (App.Div.1977), certif. den. 75 *N.J.* 522 (1977) in reaching that conclusion. In addition, the trial judge appeared to be convinced that the cause of action arose in New York.

In *Liquid Carbonic*, we held that notwithstanding the presence of enough contacts in the State of New Jersey to furnish a basis for jurisdiction in an ordinary case, considerations of "fundamental concepts of comity and public convenience" warranted dismissal of a complaint against the City of New York on jurisdictional grounds. *Id.* at 121. Perceiving that actions against municipal subdivisions were generally regarded as local

in nature, we exercised comity so as to permit institution of the action in the jurisdiction in which the municipality was situated. *Id.* Certification was denied 75 *N.J.* 522 (1977).

Since *Liquid Carbonic* was decided, the United States Supreme Court has held that there is no constitutional limitation upon the exercise of jurisdiction by the courts of one state over another state, even absent consent of the defendant state. *Nevada v. Hall*, 440 *U.S.* 410, 99 *S.Ct.* 1182, 59 *L.Ed.2d* 416 (1979). In the present case, the issue of consent was not even raised until the trial judge questioned jurisdiction during the summary judgment proceeding.

As observed in *Nevada v. Hall* and recognized by us in *Liquid Carbonic,* a forum's restraint from exercise of jurisdiction rests upon broad notions of comity. The exercise of such comity may be affected by the policy of the forum state. In *Nevada v. Hall, supra,* the Supreme Court recognized that as to a Nevada-owned vehicle involved in a serious accident in California, California's policy of full compensation for victims of automobile accidents could be enforced notwithstanding Nevada's policy of limited tort liability in actions against the state.

The principal issue in this case is not whether New Jersey *can* exercise jurisdiction or whether it is a question of personal or subject matter jurisdiction, but whether New Jersey should defer to New York, after weighing the importance of the issue under policies of each state, and decline jurisdiction on principles of comity. *Interstate Wrecking Co. v. Palisades Interstate Park Comm.,* 57 *N.J.* 342, 350 (1971). One important local interest, of course, is that of protection of citizens and businesses of this State. Another is the relative cost and inconvenience of requiring New Jersey parties to litigate in another state. Here, a routine commercial transaction is involved from the standpoint of the New Jersey party, and the alternate forum is in close proximity.

Conceivably, there may be a difference in ultimate result, depending upon the choice of law utilized by the trial court,

although we do not imply resolution of that issue. The difference could arise by reason of the approach of each state to *quantum meruit* questions presented by Warwick's acceptance and use of the product in question. *Compare, e.g., S.H. Roemer Co., Inc. v. Bd of Freeholders of Camden Co.*, 91 *N.J.Super.* 336 (Law Div.1966) and *Hudson City v. Jersey City Incinerator Auth.*, 17 *N.J.* 297 (1955), with *Gerzof v. Sweeney*, 22 *N.Y.*2d 297, 292 *N.Y.S.*2d 640, 239 *N.E.*2d 521 (1968); *Prosper Contracting Corp. v. Bd. of Ed., Etc.*, 351 *N.Y.S.*2d 402, 43 *A.D.*2d 823 (App.Div.1974); *Lance Investigation Service v. New York*, 88 *Misc.*2d 119, 387 *N.Y.S.*2d 32 (Sup.Ct.1976).

In *Liquid Carbonic*, New Jersey's interests in asserting jurisdiction over New York City were miniscule. There were, however, enough significant contacts to permit assertion of personal jurisdiction in New Jersey, were the defendant a private corporation. *See Charles Gendler & Co. v. Telecom Equipment Corp.*, 102 *N.J.* 460, 472–473 (1986). However, in *Liquid Carbonic*, delivery was made in New York, and certain gas cylinders, the subject of the dispute, were still located in New York City. We do not detect in *Liquid Carbonic* any issues of overriding policy important to either state and it may well be that inasmuch as *Liquid Carbonic* was decided prior to the *Nevada* decision, it would now be resolved differently for that reason. *See Martin v. Educational Testing Service, Inc.*, 179 *N.J.Super.* 317, 322–323 n. 5 (Ch. Div.1981).

■ Application of comity involves an examination by the court of the public policy of the forum state and the impact on that policy of enforcing the foreign proceeding. *Philadelphia v. Austin*, 86 *N.J.* 55, 65 (1981). Special deference should be given to the policy of the non-forum state when that state's strong governmental policies are implicated.

■ Warwick has adopted the trial judge's reliance upon *Liquid Carbonic* in its arguments to this court, pointing to the important New York policy which compels public bidding where

municipal contracts, such as the Baldwin sales to Warwick, exceed $5,000. This important government policy is not unique to New York. New Jersey's comparable policy as to local public contracts is set forth in *N.J.S.A.* 40A:11-1 *et seq.* Competitive bidding on public contracts is also a stable principle of our public policy, *Stephen Construction Co. v. Boro. of Rumson*, 118 *N.J.Super.* 523 (Law Div.1972), aff'd 125 *N.J.Super.* 67 (App.Div.1973), certif. den. 64 *N.J.* 315 (1973) with the purpose of elimination of corruption, favoritism, and extravagance, and to secure for the public the benefits of unfettered competition. *Pucillo v. Mayor & Council of Boro. of New Milford*, 73 *N.J.* 349 (1977).

Thus, although not critical in the present case, our opinion is strengthened by the fact that New Jersey also has a strong interest in discouraging avoidance of bidding laws by its own local public bodies, which might be tempted to make non-bidding contracts in neighboring states. We would want and expect courts of such neighboring states to respect our important governmental bidding policy by declining jurisdiction in the exercise of comity. Our courts should do no less.

We have studied with interest the opinion of the New York Court of Appeals in *Ehrlich–Bober v. Univ. of Houston*, 49 *N.Y.*2d 574, 427 *N.Y.S.*2d 604, 404 *N.E.*2d 726 (1980) which is consistent with our views, although its result might superficially suggest otherwise. The New York court recognized that there was no inherent restriction over its assertion of jurisdiction over a Texas governmental entity through long-arm process where that entity had established substantial New York-centered financial contacts through commercial dealings. It recognized as we do that comity "is not a rule of law, but one of practice, convenience and expediency" whereby the forum state defers to the important policy of another, subject to its own determination of whether the policy of the forum is in conflict. *Ehrlich–Bober supra* 427 *N.Y.S.*2d at 608, 404 *N.E.*2d

at 730. Going further, it emphasized the need for the forum state to weigh the importance of the policies of each state, when they conflict, saying:

Nor, of course, may it be said that in case of conflict New York's policy will invariably prevail, no matter how insubstantial it may be, in the face of a strong assertion of interest by the other jurisdiction. Without deciding the point, we might, for example, choose to defer to the assertion of interest by another jurisdiction where the interest in question goes to the very heart of the governmental function. *Id.*

We believe that under the principles expressed in *Ehrlich–Bober* New York courts would exercise comity in a case like this one, recognizing the common strong public bidding policy of each state, and the mutual interests served by respecting that policy. We believe that the public policy of both states is best served by exercising restraint in this kind of a case. The possible difference in remedies available in each state does not, in our judgment, outweigh the importance of encouraging comity on a governmental issue as important as public bidding.

Baldwin correctly argues that at least one of the cases relied upon in support of the *Liquid Carbonic* conclusion that the "general rule" is to hold that actions against municipal subdivisions of states should be brought in the jurisdiction where they are situated, has now been overruled. The case of *Marshall v. Kansas City, Mo.* 95 *Kan.* 548, 148 *P.* 637 (1915) unquestionably has been rejected by the Supreme Court of Kansas in its 1977 opinion of *Hillhouse v. City of Kansas City*, 221 *Kan.* 369, 559 *P.*2d 1148 (1977). The Kansas court found that "today there is no sound reason why a foreign municipal corporation should be treated any differently than foreign private corporations." As we have pointed out above, we do not equate the application of comity to the absence of jurisdiction. We affirm the decision of the trial judge, not in declaring the absence of jurisdiction, but by affirming the exercise of comity in declining to exercise that jurisdiction.

Affirmed.