725 A.2d 126 (1999)
319 N.J. Super. 324
Michael J. McDONNELL, Plaintiff-Appellant,
v.
STATE OF ILLINOIS; State of Illinois, Department of Revenue; Samuel McGaw; Michael Scaduto; Joseph Bartletti; Juan Morales; Frank Nugnes; and Brian McGrail, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1999.
Decided March 15, 1999.
*129 Michael J. McDonnell, pro se.
Stephen E. Klausner, Somerville, for defendants-respondents (Klausner, Hunter & Rosenberg, attorneys; David L. Rosenberg and Mr. Klausner, on the brief).
Before Judges STERN, BRAITHWAITE and WECKER. *127
*128 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
The central issue in this appeal is whether plaintiff, a New Jersey resident and former employee of the State of Illinois at the New Jersey field office of the Illinois Department of Revenue (IDOR), may sue the State of Illinois in a New Jersey Court for age discrimination under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. Plaintiff filed a complaint against defendants alleging that he was denied promotions and terminated from his employment because of his age. Plaintiff's complaint also sought relief for: (1) alleged violations of the IDOR employee handbook grievance procedure; (2) intentional infliction of emotional distress; (3) negligence; and (4) violations of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1140.
Defendants moved to dismiss all counts of plaintiff's complaint for lack of subject matter jurisdiction and, alternatively, for summary judgment on the intentional infliction of emotional distress and negligence claims. Defendants' motion was denied. Thereafter, defendants moved for reconsideration. On reconsideration, the motion judge dismissed plaintiff's complaint finding that: (1) Illinois law applied; (2) New Jersey did not have jurisdiction; (3) the LAD did not apply to the State of Illinois; (4) plaintiff failed to comply with the notice provisions of the New Jersey Tort Claims Act; (5) plaintiff failed to present evidence to support a claim for intentional infliction of emotional distress; and (6) an ERISA claim must be brought in federal *130 court and therefore our State courts lacked jurisdiction.
Plaintiff concedes that the motion judge properly dismissed the ERISA claim but contends that the judge erred in dismissing the remaining counts of his complaint. We hold that New Jersey has jurisdiction, that New Jersey law applies, and that the LAD does apply to the State of Illinois as an employer in this State. We therefore reverse the dismissal of plaintiff's LAD claim found in count one of his complaint, and his claim for alleged violations of the IDOR Employee Handbook Grievance Procedure found in count two of his complaint. We affirm the dismissal of the remaining counts in his complaint.

I
Plaintiff is a New Jersey resident who was hired by the IDOR on November 28, 1988, as an "Accounting and Fiscal Administrative Career Trainee" to work in IDOR's New Jersey regional office in Paramus. On October 17, 1989, plaintiff was promoted to the position of Revenue Auditor I. Plaintiff performed audits of the tax records of individuals and business entities that were subject to Illinois taxes.
After his promotion to Revenue Auditor I, plaintiff was never promoted again. According to plaintiff, he was denied promotion because of his age. He was terminated from his position on August 10, 1993, when he was fifty-two years old. He asserts that he was terminated because of his age.
Defendants Juan Morales, Frank Nugnes, and Brian McGrail are all New Jersey residents and were employed by IDOR in positions superior to plaintiff. Defendants Samuel McGaw, Michael Scaduto and Joseph Bartletti are Illinois residents. McGaw was the Commissioner of IDOR. Scaduto and Bartletti were superiors of plaintiff in the State of Illinois.
Plaintiff and defendants essentially agree on plaintiff's disciplinary history and the events leading up to his termination. In January 1993, plaintiff was suspended for five days after he had allowed a "statute of limitations waiver to lapse," which resulted in a $700 loss to IDOR. Plaintiff was subsequently terminated after he allowed five tax payment checks, totalling $48,900, to sit on his desk for approximately six weeks. According to the individual defendants, when plaintiff was confronted, he denied knowing that he had the checks. Plaintiff disputes that he denied knowing that he had the checks.
While plaintiff was employed by IDOR, all of his paychecks were issued from the State of Illinois. No New Jersey taxes or other New Jersey deductions were withheld from his salary. In addition, following his termination, plaintiff filed a claim for unemployment compensation benefits with the Illinois Department of Employment Security and ultimately received unemployment compensation payments from Illinois.

II
We note at the outset that defendants do not urge that the Superior Court of New Jersey does not have personal jurisdiction.
There are two types of personal jurisdiction: specific and general.
Specific jurisdiction is established when a defendant's acts within the forum-state give rise to the cause of action.
In contrast, when the defendant's presence in the state is unrelated to the subject matter of the lawsuit, general jurisdiction may be obtained based on the defendant's "continuous and substantial" contacts with the forum.
[Jacobs v. Walt Disney World, Co., 309 N.J.Super. 443, 452, 707 A.2d 477 (App.Div.1998) (citations omitted).]
Clearly the State of Illinois and the individual defendants have "minimum contacts" with New Jersey. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945). " `[I]t is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws.'" Waste Management Inc. v. Admiral Ins. Co., 138 N.J. 106, 119, 649 A.2d 379 (1994), cert. denied, WMX Technologies, Inc. v. Canadian General Ins. Co., 513 U.S. 1183, *131 115 S.Ct. 1175, 130 L. Ed.2d 1128 (1995) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L. Ed.2d 1283, 1298).
The motion judge, in ruling that Illinois law applied to plaintiff's claims, seems to have confused choice of law with the issue of personal jurisdiction. Even if Illinois law applied, which we do not hold, that would not preclude a New Jersey court from exercising personal jurisdiction and adjudicating the matter applying Illinois law. See Gantes v. Kason Corp., 145 N.J. 478, 484, 679 A.2d 106 (1996); Veazey v. Doremus, 103 N.J. 244, 247-49, 510 A.2d 1187 (1986); Keil v. National Westminster Bank, 311 N.J.Super. 473, 488-91, 710 A.2d 563 (App.Div.1998).
Defendants assert that "sovereign immunity and/or comity bars the New Jersey courts from exercising personal jurisdiction over the State of Illinois." We disagree. The doctrine of sovereign immunity "supports the conclusion that no sovereign may be sued in its own courts without its consent, but it affords no support for a claim of immunity in another sovereign's courts." Nevada v. Hall, 440 U.S. 410, 416, 99 S.Ct. 1182, 1186, 59 L. Ed.2d 416, 422 (1979).
In Hall the United States Supreme Court held that the federal constitution does not prohibit one state from exercising jurisdiction over another. Plaintiff, John Hall, a California resident, was involved in a car accident with an employee of the University of Nevada (University), which is an instrumentality of the State of Nevada (Nevada). 440 U.S. at 411, 99 S.Ct. at 1184, 59 L. Ed.2d at 419. At the time of the accident, the University employee was engaged in official business while driving a car owned by Nevada. Ibid. The accident took place in California. Ibid.
Hall and his mother filed suit in a California state court and properly served the University and Nevada. Id. at 412, 99 S.Ct. at 1184, 59 L. Ed.2d at 419. The trial court quashed service on Nevada, but its decision was reversed by the California Supreme Court, which held that under California law, Nevada could be sued in a California court. Ibid. The matter was remanded and proceeded to trial. Ibid.
At trial, Nevada filed a motion to limit the amount of damages that plaintiffs could recover because Nevada's liability was limited to $25,000 under its tort claims act. Ibid. Nevada argued that the Full Faith and Credit Clause of the United States Constitution required the California court to apply Nevada's statute limiting damages. Id. at 412-13, 99 S.Ct. at 1184, 59 L. Ed.2d at 420. Nevada's motion was denied, and the plaintiffs were awarded $1,150,000. Id. at 413, 99 S.Ct. at 1184, 59 L. Ed.2d at 420-21. The California Court of Appeals affirmed the judgment, and the California Supreme Court denied review. Ibid. The United States Supreme Court, however, granted certiorari and affirmed the California Court of Appeals' decision. Id. at 414, 427, 99 S.Ct. at 1185, 1191, 59 L. Ed.2d at 421, 429.
The Supreme Court rejected the position that sovereign immunity barred California from exercising jurisdiction over Nevada. Moreover, the Court's examination of Article III and the Eleventh Amendment of the United States Constitution did not reveal any basis to prohibit California from exercising jurisdiction over Nevada. Id. at 421, 99 S.Ct. at 1188, 59 L. Ed.2d at 425. "[T]here is no constitutional limitation upon the exercise of jurisdiction by the courts of one state over another state, even absent consent of the defendant state." Baldwin Enters., Inc. v. Town of Warwick, N.Y., 226 N.J.Super. 549, 552, 545 A.2d 201 (App.Div.), certif. denied, 113 N.J. 364, 550 A.2d 471 (1988).
Although sovereign immunity does not prohibit New Jersey from exercising jurisdiction over Illinois, principles of comity may cause New Jersey to decline jurisdiction. Ibid. "But even though New Jersey jurisdiction is recognized, the question remains whether its exercise should now fairly be withheld under principles of comity." Interstate Wrecking Co. v. Palisades Interstate Park Comm'n, 57 N.J. 342, 350, 273 A.2d 10 (1971). Here, the application of comity requires us to examine the public policy of both New Jersey and Illinois. Baldwin Enters., supra, 226 N.J.Super. at 553, 545 A.2d 201.
*132 Plaintiff's claim is essentially one for age discrimination. Both Illinois and New Jersey have a strong public policy against discrimination. Illinois has a statute known as the Illinois Human Rights Act (HRA), 775 Ill. Comp. Stat. 5/1-101 to 5/10-103 (West 1993) which, among other things, prohibits discrimination in employment. Our review of that statute, however, convinces us that plaintiff would be unable to seek relief for his claim of age discrimination. First, the purpose of the HRA is "to promote the public health, welfare and safety of the People of Illinois by preventing unlawful discrimination in employment...." 775 Ill. Comp. Stat. 5/1-101 (emphasis added). Second, the avowed public policy of Illinois with respect to employment discrimination is "[t]o secure for all individuals within Illinois ... freedom from discrimination...." 775 Ill. Comp. Stat. 5/1-102(A) (emphasis added). Third, and perhaps most significantly, the definition of employee includes "[a]ny individual performing services for remuneration within the State for an employer." 775 Ill. Comp. Stat. 5/2-101(A)(1)(a) (emphasis added). The definition of employer includes the State of Illinois "and any political subdivision, municipal corporation or other governmental unit or agency, without regard to the number of employees." 775 Ill. Comp. Stat. 5/2-101(B)(1)(c).
We did not find any case law that addresses the issue of whether the HRA applies to a non-Illinois resident who is employed by the State of Illinois outside of its borders. However, the clear language of the HRA, as well as its stated purpose, leads us to the conclusion that the Illinois Legislature intended that, in this context, the HRA should apply only to Illinois residents who work for employers within the State of Illinois. We are satisfied that an Illinois court would similarly interpret the HRA as we do.
The cardinal rule of all statutory construction, to which other rules are subordinate, is that the true intent and meaning of the legislature must be ascertained and given effect. The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted. Absent statutory definitions indicating a different legislative intention, courts will assume that words have their ordinary and popularly understood meaning.
[General Motors Corp. v. Industrial Comm'n, 62 Ill.2d 106, 338 N.E.2d 561, 564 (1975) (citations omitted).]
In the Interest of M.G., 307 N.J.Super. 348, 354, 704 A.2d 1025 (App.Div.), certif. denied, 154 N.J. 607, 713 A.2d 498 (1998) (holding that statute's "[c]lear language precludes ... any meaning other than as expressed"); State v. Panther Valley Property Owners Ass'n, 307 N.J.Super. 319, 329, 704 A.2d 1010 (App.Div.1998) (holding that statute's plain language "should be `given its ordinary meaning and [be] construed in a common sense manner to accomplish the legislative purpose`") (citation omitted). Accordingly, we conclude that although Illinois has a strong public policy against discrimination, by the clear language of the statute, it does not apply to plaintiff.
When we look to the LAD, plaintiff's age discrimination claim is covered and the only issue is whether it applies to Illinois. We are satisfied that the definition of employer, under these circumstances, includes Illinois. The LAD provision applicable to plaintiff's claim prohibits an employer from denying promotions and discharging an employee because of the employee's age. N.J.S.A. 10:5-12a (emphasis added). Illinois and IDOR were plaintiff's employer. Under the LAD, however, the term "employer" does not specifically identify non-New Jersey governmental entities. The LAD defines employer as follows: "Employer includes all persons as defined in subsection a[1] of this section unless otherwise specifically exempt under another section of this act, and includes the State, any political or civil subdivision thereof, and all public officers, agencies, *133 boards or bodies." N.J.S.A. 10:5-5e (emphasis added).
One could argue that the language "the State" in the definition of employer only applies to New Jersey. Support for this construction can be found by comparison with other statutes where the Legislature clearly sets forth that "the State" includes other states of the United States. Compare N.J.S.A. 2A:41A-1 (Interstate Compact on Interpleader identifying "[a] State" to mean, among other things, "a State of the United States") and N.J.S.A. 2A:159A-2(a) (Interstate Agreement on Detainers identifying "State" to mean, among other things, "a State of the United States") and N.J.S.A. 30:7B-2(h) (Interstate Transfers of Mentally Ill Act identifying "State" to mean, among other things, "any State ... of the United States") with N.J.S.A. 18A:72-10(a) (Higher Education Assistance Authority Law referring to institutions "outside the State") and N.J.S.A. 59:1-3 (Tort Claims Act identifying "State" to mean "the State") and N.J.S.A. 59:13-2 (New Jersey Contractual Liability Act identifying "State" to mean "the State"). These examples could arguably support the position that the words "the State" found in the LAD definition of employer applies only to New Jersey because in those situations where the Legislature intended a different meaning it has clearly said so.
However,
Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the revised statutes, shall have the meaning herein given to them.
...
State. The word "State" extends to and includes any State, territory or possession of the United States, the District of Columbia and the Canal Zone.

[N.J.S.A. 1:1-2]
Here, the LAD does not otherwise expressly provide that the phrase "the State" is limited solely to New Jersey. Moreover, the extension of the phrase to include Illinois is not "repugnant to such construction," ibid., because the LAD is to be liberally construed to further its goal of eradicating " `the cancer of discrimination.'" Dale v. Boy Scouts of America, 308 N.J.Super. 516, 533, 706 A.2d 270 (App.Div.), certif. granted, 156 N.J. 381, 718 A.2d 1210 (1998) (quoting Fuchilla v. Layman, 109 N.J. 319, 537 A.2d 652, cert. denied sub. nom., University of Medicine and Dentistry of N.J. v. Fuchilla, 488 U.S. 826, 109 S.Ct. 75, 102 L. Ed.2d 51 (1988)).
Under these circumstances, to construe the LAD otherwise, so as to not include Illinois, would be contrary to its purposes. The State of Illinois maintains an office in New Jersey employing New Jersey residents where it reaps certain benefits from doing business in New Jersey. To limit the reach of the LAD so as to exclude other states who do business here and employ our residents would be manifestly unfair to those New Jersey residents employed by those states. The State of New Jersey, unfortunately, is not the only state in our union that is capable of discrimination. Other states who do business here and subject our residents to acts of discrimination should be subject to our laws. We do not think that the LAD, in the area of employment discrimination, should apply to the State of New Jersey and not to another state operating within our borders and employing our residents. To interpret the LAD otherwise would be "irrational." Dale, supra, 308 N.J.Super. at 533, 706 A.2d 270.
Although the policies of both New Jersey and Illinois are similar with respect to discrimination in employment, plaintiff has no remedy in Illinois. Our failure to exercise jurisdiction would leave plaintiff without a remedy for his claims. Leaving plaintiff with no remedy either under the law of the state where he resides and worked, or under the law of the state that employed him, is repugnant to New Jersey's statutorily based policy of protecting its residents from discrimination, N.J.S.A. 10:5-3. When applying principles of comity, one important interest of the forum state is the protection of its citizens. Baldwin Enterprises, supra, 226 N.J.Super. at 552, 545 A.2d 201.
*134 Moreover, despite the similarity in purpose between New Jersey's and Illinois' anti-discrimination statutes, they diverge greatly in the remedy to be awarded to a victim of discrimination. New Jersey permits recovery of "[a]ll remedies available in common law tort actions...." N.J.S.A. 10:5-13. Illinois is not so generous. It limits a plaintiff's recovery under the HRA to his or her actual damages. See 775 Ill. Comp. Stat. 8A/104. Further, HRA claims in the State of Illinois may not be instituted in a court proceeding, but only before the Human Rights Commission created by the HRA. 775 Ill. Comp. Stat. 8/101. Even if a claimant under the HRA could recover in tort, the damages would be limited to $100,000. 705 Ill. Comp. Stat. 50 5/8(d).
When we consider the public policy of New Jersey and Illinois in these circumstances, principles of comity do not cause us to conclude that New Jersey ought to decline jurisdiction over Illinois. The circumstances are compelling for exercising jurisdiction considering our strong public policy against discrimination and the lack of an available remedy to plaintiff under Illinois law.

III
We deem it appropriate to comment briefly on the choice of law issue. Based on our earlier discussion, we are satisfied that New Jersey law applies to plaintiff's viable claims. New Jersey's choice of law rule "applies a flexible `governmental interest' standard, which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." Gantes v. Kason Corp., supra, 145 N.J. at 484, 679 A.2d 106 (citation omitted). "The initial prong of the governmental interest analysis entails an inquiry into whether there is an actual conflict between the law of the respective states...." Ibid. Here, as noted supra, there is a conflict because plaintiff would not have a remedy in Illinois.
The second prong of the analysis "seeks to determine the interest each state has in resolving the issue in dispute. That analysis requires the court to `identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties.'" Id. at 485, 679 A..2d 106 (quoting Veazey, supra, 103 N.J. at 248, 510 A.2d 1187).
The purpose of HRA is to prevent unlawful discrimination in order to promote the health, welfare and safety of Illinois' citizens. In the context of employment discrimination, Illinois' policy is to protect Illinois' residents who work for employers within the State of Illinois. Plaintiff did not work in the State of Illinois. By contrast, the LAD also seeks to prevent unlawful discrimination, but is much broader in its scope than the HRA. It is to be liberally construed. "[T]he clear public policy of this State is to abolish discrimination in the work place." Fuchilla, supra, 109 N.J. at 334, 537 A.2d 652.
As the Legislature has declared, "discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and functions of a free democratic State." The day is long past when any employee need endure discrimination because of his or her race, religion, national origin, [age] or gender. Employment discrimination is not just a matter between employer and employee. The public interest in a discrimination-free work place infuses the inquiry.
[Id. at 334-35, 537 A.2d 652 (citations omitted).]
Plaintiff is a New Jersey resident. The acts that are the basis of his claims occurred in New Jersey. Three of the individual defendants are New Jersey residents. Illinois maintains an office in New Jersey to assist in the collection of taxes from individuals and entities liable for Illinois taxes. Applying these factors, we are convinced that New Jersey has the more significant relationship to the parties and the litigation. Applying our choice-of-law rule, New Jersey law applies only to plaintiff's viable claims.

IV
The motion judge erroneously concluded that plaintiff failed to comply with the notice provision of the New Jersey Tort *135 Claims Act (Act). N.J.S.A. 59:8-8 and -9. Claims of discrimination are not subject to the notice requirements of the Act. Fuchilla, supra, 109 N.J. at 337-38, 537 A.2d 652. The Illinois statute covering notice of claims is likewise not applicable. Any violation under the HRA is brought before the Illinois Human Rights Commissions which has exclusive jurisdiction over claimed violations of the HRA. 775 Ill. Comp. Stat. 8/101; Mein v. Masonite Corp., 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312, 315 (1985). The Illinois notice provision applies only to claims filed in its court of claims. 705 Ill. Comp. Stat. 505/22-1. Further, applying our choice-of-law rule, on the issue of notice, New Jersey law would apply. Here, as noted supra, New Jersey has the most significant interest in the litigation. Gantes, supra, 145 N.J. at 492-93, 679 A.2d 106.

V
Finally, we affirm the dismissal of the last three counts of plaintiff's complaint. Plaintiff's negligence claim is barred by the Workers' Compensation Statute. N.J.S.A. 34:15-7. It is also barred in Illinois. 820 Ill. Comp. Stat. 305/3; Mier v. Staley, 28 Ill.App. 3d 373, 329 N.E.2d 1 (1975).
Plaintiff concedes that his ERISA claim was properly dismissed. We agree. It can only be commenced in federal court.
We also affirm the dismissal of plaintiff's claim for intentional infliction of emotional distress. Because defendants' motion, in this respect, was based on matters outside the record, it was in the nature of a motion for summary judgment. R. 4:6-2(e). "Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Saving Fund Society, 111 N.J. 355, 366, 544 A.2d 857 (1988). The same standard applies under Illinois law. See Pavilon v. Kaferly, 204 Ill.App. 3d 235, 149 Ill.Dec. 549, 561 N.E.2d 1245, 1250 (1990). Plaintiff's allegations do not give rise to a finding that defendants' conduct exceeded "all possible bounds of decency." Ibid.; Taylor v. Metzger, 152 N.J. 490, 509, 706 A.2d 685 (1998). No reasonable fact-finder could conclude that defendants' conduct satisfied the standard for intentional infliction of emotional distress. The judge properly granted summary judgment to defendants with respect to this claim. See Brill v. Guardian Life Ins. Co., 142 N.J. 520, 666 A.2d 146 (1995).

VI
We reverse the dismissal of count one and two and remand for further proceedings consistent with this opinion. We affirm in all other respects.
NOTES
[1] N.J.S.A. 10:5-5a states: "Person" includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries.