748 A.2d 1105

MICHAEL J. MCDONNELL, PLAINTIFF–RESPONDENT, v. STATE OF ILLINOIS; STATE OF ILLINOIS, DEPARTMENT OF REVENUE; SAMUEL MCGAW; MICHAEL SCADUTO; JOE BARTLETTI; JUAN MORALES; FRANK NUGNES; AND BRIAN MCGRAIL, DEFENDANTS–APPELLANTS.

Argued January 19, 2000—Decided March 2, 2000.

*Joel D. Bertocchi,* Solicitor General of Illinois, a member of the Illinois bar, and *Stephen E. Klausner,* argued the cause for appellants (*Klausner, Hunter & Rosenberg,* attorneys; *Mr. Klausner* and *David L. Rosenberg,* of counsel and on the brief).

*Michael J. McDonnell,* argued the cause *pro se.*

PER CURIAM.

We affirm the judgment and disposition of the Appellate Division substantially for the reasons set forth in Judge Braithwaite's thoughtful and comprehensive opinion. *McDonnell v. State of Illinois,* 319 *N.J.Super.* 324, 725 *A.*2d 126 (App.Div.1999). We add these further observations, however, in view of the strongly asserted views expressed by the Solicitor General of Illinois, appearing *pro hoc vice* before our Court, that plaintiff's cause of action against the State of Illinois, the Illinois Department of Revenue (IDOR), and individual IDOR employees should be dismissed on comity grounds.

As noted by the Appellate Division opinion, *id.* at 333–35, 725 *A.*2d 126, the United States Supreme Court in *Nevada v. Hall,* 440 *U.S.* 410, 425–26, 99 *S.Ct.* 1182, 1191, 59 *L.Ed.*2d 416, 425–26 (1979), concluded that although the Eleventh Amendment bars suits in federal courts against a state by citizens of another state, it does not prohibit a state from being sued in another state's courts; nor does the full faith and credit clause require the forum State to apply another State's law concerning sovereign immunity if to do so would contravene a significant public policy of the forum State. The Court noted that the question whether one State should defer to the laws of a sister's State consistently has been regarded as a matter of State policy, not constitutional mandate:

> The intimate union of these states, as members of the same great political family; the deep and vital interests which bind them so closely together; should lead us, in

the absence of proof to the contrary, to presume a greater degree of comity, and friendship, and kindness towards one another, than we should be authorized to presume between foreign nations. And when (as without doubt must occasionally happen) the interest or policy of any state requires it to restrict the rule, it has but to declare its will, and the legal presumption is at once at an end.

[*Id.* at 426, 99 *S.Ct.* at 1182, 59 *L.Ed.*2d at 428 (quoting *Bank of Augusta v. Earle,* 38 *U.S.* 519, 590, 13 *Pet.* 519, 590, 10 *L.Ed.* 274 (1839)).]

Accordingly, the Court in *Hall* encouraged but did not compel states to accord deference to each others laws as a matter of comity:

It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so. But if a federal court were to hold, by inference from the structure of our Constitution and nothing else, that California is not free in this case to enforce its policy of full compensation, that holding would constitute the real intrusion on the sovereignty of the States—and the power of the people—in our Union.

[440 *U.S.* at 426–427, 99 *S.Ct.* at 1191, 59 *L.Ed.*2d at 429.]

In addressing the comity issue, the Appellate Division concluded that to require plaintiff to pursue his claims in Illinois courts pursuant to the Illinois Human Rights Act (HRA), 775 *Ill. Comp. Stat.* 5/1–101 to 5/10–103 (West 1993), would leave plaintiff remediless because the definition of "employee" under the HRA applies only to individuals "performing services for remuneration *within the State* for an employer." 319 *N.J.Super.* at 335, 725 *A.*2d 126 (internal quotations omitted). Accordingly, the court concluded that the HRA would not afford plaintiff a remedy. *Id.* at 336, 725 *A.*2d 126.

We note, however, that the HRA defines a "Public Employee" as "an employee of the State, agency or department thereof, unit of local government, school district, instrumentality or political subdivision." 775 *Ill. Comp. Stat.* 5/2–101(H). We also note that the HRA guarantees and secures several rights enumerated in Article 1, Section 17 of the Illinois Constitution, including the right to be free from discrimination. 775 *Ill. Comp. Stat.* 5/1–102(F). Those provisions of the HRA suggest persuasively that plaintiff could have asserted a cause of action in Illinois under that statute, subject to the limitation that the claim be filed only before the

Illinois Human Rights Commission, 775 *Ill. Comp. Stat.* 5/8–111(c), and that monetary damages are limited to actual damages for injury or loss, back pay, and attorneys' fees. 775 *Ill. Comp. Stat.* 5/8A–104(B), (C), (G). Nevertheless, because the HRA requires discrimination claims to be filed with the Illinois Department of Human Rights within 180 days of when a claimant discovers his injury, 775 *Ill. Comp. Stat.* 5/7A–102(A)(1), we also conclude that plaintiff would have no remedy under the HRA because his claim would be time barred.

The Appellate Division rested its determination not to apply comity on the unavailability of redress for plaintiff under the HRA, its conclusion that the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, applied to the Illinois defendants, the fact that the LAD would apply to the State of New Jersey if it discriminated against a public employee in violation of the statute, and New Jersey's strong public policy against discrimination in employment. We agree that those reasons argue persuasively against dismissing plaintiff's suit on comity grounds.

We also note that the Appellate Division's rationale is not inconsistent with the Supreme Court of Illinois' pronouncements on the application of comity. In *Schoeberlein v. Purdue University*, 129 *Ill.*2d 372, 135 *Ill.Dec.* 787, 544 *N.E.*2d 283 (1989), an Illinois resident sued Purdue University (Purdue), an instrumentality of the State of Indiana, in an Illinois state court to recover damages for personal injuries. Under Indiana law plaintiff could have sued Purdue only in Indiana state courts and was subject to a maximum recovery of $300,000. The Illinois Supreme Court noted that if plaintiff sought to assert a claim in Illinois courts against an Illinois state agency, jurisdiction would be limited to the Illinois Court of Claims and recovery would be limited to $100,000. *Id.* 135 *Ill.Dec.* 787, 544 *N.E.*2d at 286. Because it concluded that Indiana's restrictions on its liability were not inconsistent with those of Illinois, the Court dismissed plaintiff's suit on comity grounds. It observed:

> Thus, the generally accepted rationale of the States that have not, through comity, accepted another State's claim of sovereign immunity is that a sister State's claim of immunity will not be recognized if the forum of litigation permits recovery

against the home State under similar circumstances. In Illinois, as noted above, under the circumstances presented in this case, Illinois could not be sued in the circuit courts of this State, and a limitation is placed on the amount that may be recovered against Illinois in the Court of Claims. We conclude that on the basis of comity, it is consistent with policies expressed by our Court of Claims Act and not inconsistent with policies in our State constitution to honor Indiana's reservation of sovereign immunity.

[*Id.* 135 *Ill.Dec.* 787, 544 *N.E.*2d at 288.]

Our courts' precedents on the applicability of comity focus on an evaluation of the laws and policies of New Jersey and those of the affected state. *City of Philadelphia v. Austin,* 86 *N.J.* 55, 64, 429 *A.*2d 568 (1981); *Baldwin Enterprises, Inc. v. Town of Warwick, N.Y.,* 226 *N.J.Super.* 549, 553, 545 *A.*2d 201 (App.Div.1988). Decisions by other state courts to extend comity to a sister state often reflect a determination that the recognition of the sister state's immunity would not offend the policies of the forum state. *See, e.g., University of Iowa Press v. Urrea,* 211 *Ga.App.* 564, 440 *S.E.*2d 203 (1993) (recognizing Iowa's sovereign immunity under Iowa Tort Claims Act as a matter of comity does not offend public policy of Georgia whose statutes accord comparable immunity to Georgia public entities); *Reed v. University of North Dakota,* 543 *N.W.*2d 106 (Minn.Ct.App.1996) (holding that recognition of North Dakota's sovereign immunity law would not offend public policies of Minnesota); *Hawsey, III v. Louisiana Dep't of Social Servs.,* 934 *S.W.*2d 723 (Tex.App.1996) (dismissing plaintiffs libel and false imprisonment suit on comity grounds and noting similarity between Texas and Louisiana sovereign immunity provisions); *Jackett v. Los Angeles Dep't of Water & Power,* 771 *P.*2d 1074 (Utah Ct.App.1989) (dismissing plaintiff's tort action on comity grounds and emphasizing congruity of Utah and California sovereign immunity statutes).

Courts that have declined to extend comity to sister states have stressed the fact that the forum state's law would not provide its own state with such immunity, or that the forum state's policies would be disserved by a recognition of comity. *See Head v. Platte County, Missouri,* 242 *Kan.* 442, 749 *P.*2d 6, 10 (1988) (declining to extend immunity to Missouri under comity principles because to

do so would result in "granting greater immunity to our sister state than the immunity which our citizens through the legislature have bestowed upon our state government"); *Ehrlich–Bober & Co., Inc. v. University of Houston*, 49 *N.Y.*2d 574, 427 *N.Y.S.*2d 604, 404 *N.E.*2d 726, 730 (1980) (declining to afford comity based on Texas institution's assertion of sovereign immunity because suit was based on commercial transaction that occurred primarily in New York and New York's "interest naturally embraces a very strong policy of assuring access to a forum for redress of injuries arising out of transactions spawned here"); *Morrison v. Budget Rent A Car Systems, Inc.*, 230 *A.D.*2d 253, 657 *N.Y.S.*2d 721 (N.Y.App.Div.1997) (declining to apply comity and recognize immunity under South Carolina Tort Claims Act where New York law would not extend immunity to New York in comparable circumstances).

Illinois contends that our refusal to apply comity and dismiss plaintiff's suit against the Illinois defendants would be disruptive to Illinois' revenue collection activity, a basic state governmental function. We perceive no such disruption. Illinois is free to continue to collect tax revenue due to it from New Jersey sources provided it does so without discriminating against employees who live in New Jersey in violation of the LAD. We acknowledge the possibility that the remedy of reinstatement authorized by the LAD, *N.J.S.A.* 10:5–17 might constitute an affront to Illinois' sovereignty and we expressly preclude the award of reinstatement on remand. In all other respects, we are persuaded that the Appellate Division's refusal to extend comity to Illinois and to remand plaintiff's suit to the Law Division for trial constitutes the appropriate disposition of this appeal.

*For affirmance*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO— 7.

*Opposed*—None.