791 A.2d 1007 (2002)
348 N.J. Super. 143
Frederick BROWN, Plaintiff-Respondent, Cross-Appellant,
v.
CITY OF BORDENTOWN and Commissioner James Lynch, Defendants-Appellants, Cross-Respondents,
and Bordentown City Police Department, Patricia Ryan, Mayor Joseph Malone, Zigmont Targonski, Police Chief Philip J. Castagna, and New Jersey State Department of Personnel and its Agents, Servants, and Employees, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2001.
Decided January 16, 2002.
*1009 Richard W. Hunt, Marlton, argued the cause for appellant (Parker, McCay & Criscuolo, attorneys; Mr. Hunt and Stacy L. Moore, Jr., on the brief).
Perry S. Warren, Princeton, argued the cause for respondent (Maselli Warren, attorney; Jean L. Markey, on the brief).
Before Judges KING, CUFF[1] and WINKELSTEIN.
*1008 The opinion of the court was delivered by KING, P.J.A.D.
This Law Against Discrimination case is before us on appeals improperly brought from an interlocutory order of May 10, 2000. The primary issue is the viability of the common-law legislative immunity defense to this statutory cause of action.
The appeal was filed on May 11, 2000; the cross-appeal on May 25, 2000. The interlocutory order granted summary judgment to the City of Bordentown and denied summary judgment to the defendant James Lynch, a city commissioner. The judge improperly certified the order as a final judgment pursuant to R. 4:42-2. Notwithstanding this manifestly improper certification of a clearly interlocutory order as final, we grant leave to appeal out-of-time on both the appeal and cross-appeal. We entertain the matter in the interests of justice and to avoid further delay in this matter, originally filed in the Law Division in 1993. The appeals, despite the procedural irregularities, present several discrete legal issues which are amenable to and require resolution at this time. See Taylor by Wurgaft v. General Elec. Co., 208 N.J.Super. 207, 211, 505 A.2d 190 (App.Div.), certif. denied, 104 N.J. 379, 517 A.2d 388 (1986).
We reverse the summary judgment order in favor of the City and affirm but modify the denial of summary judgment order with respect to the claim against Commissioner Lynch. We remand for a prompt trial. The judge also ordered a bifurcation and severed trials on plaintiff's dual discriminatory promotion and retaliation claims. We reverse this severance order as a mistaken exercise of discretion. See Rendine v. Pantzer, 141 N.J. 292, 307-11, 661 A.2d 1202 (1995).
This case presents claims by the plaintiff Frederick Brown, a sergeant in the City's police department, against the City and others claiming violations of his rights under the Law Against Discrimination, N.J.S.A. 10:5-1 to 42(LAD). Brown *1010 claims that the defendants, or some of them, principally defendant Lynch, engaged in racial discrimination in the hiring of defendant Phillip Castagna for the post of Chief of Police, on July 8,1991. He also claims unlawful retaliation after this appointment.
Defendant Lynch eventually moved for summary judgment on the ground of common-law legislative immunity. The Law Division judge denied this motion on the ground that Lynch was entitled only to "qualified immunity subject to good faith." As noted, we affirm this denial of summary judgment as to Lynch with modification. Commissioner Lynch was in charge of the Department of Public Safety. The City was organized with three commissioners under the Walsh Act, "the commission form of government," N.J.S.A. 40:70-1 to 76-27. Under the Walsh Act: "The board of commissioners... shall have all the executive, administrative, judicial and legislative powers and duties ... and shall have complete control over the affairs of such municipalities." N.J.S.A. 40:72-2. Lynch headed the Department of Public Safety under the distribution of powers scheme established in the City's government. N.J.S.A. 40:72-4. This blending of powers as head of the department of public safety creates the problem presented by this case.
Lynch is charged with racial discrimination in participating in the hiring of defendant Castagna, a Caucasian, as Chief of Police, in preference to plaintiff, an African-American. We agree that Lynch, as commissioner in charge of the Department of Public Safety, enjoyed common-law "legislative immunity" in voting on Resolution 1991-68 appointing Castagna as Chief of Police on July 8, 1991. On this point we adopt the reasoning of the United States Supreme Court's unanimous decision in Bogan v. Scott-Harris, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). In Bogan, the Supreme Court held that the legislative acts of Fall Rivers' mayor and city council's vice-president enjoyed absolute immunity from liability claims for discrimination leveled under 42 U.S.C.A. § 1983 when they voted to eliminate certain city jobs, including the plaintiff's. The Court found that legislative immunity "has long been recognized in Anglo-American law" and has "a venerable tradition." Bogan v. Scott-Harris, 523 U.S. at 48-49, 118 S.Ct. at 970, 140 L.Ed.2d at 85. The "acts of voting for an ordinance were, in form, quintessentially legislative," id., 523 U.S. at 55, 118 S.Ct. at 973, 140 L.Ed.2d at 89, as were all "integral steps in the legislative process." Ibid. The Court also strongly implied that the "hiring and firing of a particular employee" was different in character from a traditional legislative act. Id., 523 U.S. at 56, 118 S.Ct. at 973, 140 L.Ed.2d at 89.
Our recognition here of common-law legislative immunity as a defense to an LAD claim follows the lead of Judge Keefe's opinion for this court in Peterson v. Ballard, 292 N.J.Super. 575, 679 A.2d 657 (App.Div.), certif. denied, 147 N.J. 260, 686 A.2d 761(1996), and Judge Skillman's trial-level opinion in Timber Properties, Inc. v. Chester Twp., 205 N.J.Super. 273, 284, 500 A.2d 757 (Law Div.1984), which held that common-law litigation immunity and legislative immunity, respectively, were preserved in actions under both the LAD and § 1983. We rely on the reasoning of these opinions in finding a sound basis for legislative immunity as a defense to an LAD claim.
The sparse record before us prevents any precise line-drawing as to when Lynch's asserted conduct in this circumstance, relating to his allegedly actionable discriminatory administrative conduct in proposing Castagna for the chief's position, became immunized legislative activity. We take some guidance from our State *1011 Constitution's "speech and debate" clause relating to the privilege of legislators which says "for any statement, speech or debate in either house or at any meeting of a legislative committee, they shall not be questioned in any other place." N.J. Const. art. 12, § 4, § 9. See State v. Gregorio, 186 N.J.Super. 138, 151-53, 451 A.2d 980 (Law Div.1982) (Judge Baime relates the history of the clause); Van Riper v. Tumulty, 26 N.J. Misc. 37, 41, 56 A.2d 611 (1948) (statement before legislative committee by state legislator privileged). Without any factual record we cannot make any more specific conclusions on where legislative conduct stops and administrative or personal conduct begins.
Members of the legislature and the judiciary are not protected by their status alone from liability claims. Davis v. Passman, 442 U.S. 228, 246, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846, 863 (1979) (Congressman can be held liable for gender discrimination in hiring); Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (state-court judge may be held liable under § 1983 for gender discrimination in hiring and firing). Some guidance is found in Justice O'Connor's observations in the Court's unanimous opinion in Forrester as to a judge's administrative actions and responsibilities:
This Court has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity. The decided cases, however, suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform. Thus, for example, the informal and ex parte nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character. See Stump v. Sparkman, 435 U.S. 349, 363, n. 12, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978). Similarly, acting to disbar an attorney as a sanction for contempt of court, by invoking a power "possessed by all courts which have authority to admit attorneys to practice," does not become less judicial by virtue of an allegation of malice or corruption of motive. Bradley v. Fisher, 80 U.S. 335, 13 Wall at 354, 20 L.Ed. 646 (U.S.Dist.Col.1871).
As the Bradley Court noted: "Against the consequences of [judges'] erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies, they must, in such cases, resort." Ibid.

Administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts. In Ex Parte Virginia, 100 U.S. 339, 25 L.Ed. 676 (1880), for example, this Court declined to extend immunity to a county judge who had been charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors for the county's courts. The Court reasoned:
"Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge.... That the jurors are selected for a court makes no difference. So are court-criers, tipstaves, sheriffs, & c. Is their election or their appointment a judicial act?" Id. at 348, 25 L.Ed. 676.
Although this case involved a criminal charge against a judge, the reach of the court's analysis was not in any obvious way confined by that circumstance.

*1012 [Id. at 227-28, 108 S.Ct. at 544, 98 L.Ed.2d at 555-56.]
Under this practical test, "Mere as in other contexts, immunity is justified and defined by the function it protects and serves, not by the person to whom it attaches." Id. at 227, 108 S.Ct. at 544, 98 L.Ed.2d at 565. If Commissioner Lynch acted in an administrative or executive capacity, or simply on his own, in promoting and influencing a discriminatory hiring, as opposed to his immunized legislative role, he can be held liable under the LAD.
We also stress that Title 59 immunities have no bearing on this claim under the LAD Fuchilla v. Layman, 109 N.J. 319, 322, 537 A.2d 652 (1988) (Title 59 notice requirement is not applicable to LAD claim); Brook v. April, 294 N.J.Super. 90, 100, 682 A.2d 744 (App.Div.1996) (workers compensation retaliation claim); see Abbamont v. Piscataway Tp. Bd. of Ed., 138 N.J. 405, 650 A.2d 958 (1994) (punitive damage claim under CEPA). Where an employee has acted willfully or intentionally in violation of a comprehensive statutory provision, an employee, officer or a public entity is not necessarily immunized under Title 59.
We turn to the claim against the City which prevailed on summary judgment in the Law Division on absolute immunity grounds. We reverse because under certain circumstances the City could be liable under agency principles for the alleged discriminatory conduct of the Commissioner in charge of public safety. Of course, the City enjoys derivative immunity for Lynch's legislative activity, discussed above. This derivative immunity does not extend to Lynch's administrative or executive activities. The City may be liable as a principal or employer under the LAD. The definition section clearly includes as "persons," ... "the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies." N.J.S.A. 10:5-5(e). An unlawful employment practice, or an unlawful discrimination practice or reprisal may impose liability on the governmental principal. See McDonnell v. State of Illinois, 319 N.J.Super. 324, 336, 725 A.2d 126, affirmed, 163 N.J. 298, 748 A.2d 1105 (2000). See Blakey v. Continental Airlines, 164 N.J. 38, 57-59, 751 A.2d 538 (2000); Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 624, 626 A.2d 445 (1993); Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 535-59, 691 A.2d 321 (1997).
We reverse and remand for trial on liability as to the City under extant agency principles generally recognized under the LAD. Again, with the sparse factual record before us, we cannot be more specific on the controlling agency principles, as applied to this particular racial discrimination claim.
Reversed on the cross-appeal as to the City; affirmed, as modified, on the appeal by Lynch; also, on the cross-appeal, the order of trial severance is reversed.
NOTES
[1] Judge Cuff was not present for oral argument but has reviewed the tape recording of the session. The parties consented at oral argument to her participation in the decision.