766 A.2d 292 (2001)
337 N.J. Super. 15
Darius GRIFFIN and Mary Griffin, Plaintiffs-Respondents/Cross-Appellants,
v.
TOPS APPLIANCE CITY, INC., Philip M. Schmidt, Philip J. Schoonover and Peter Huber, Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 2000.
Decided January 25, 2001.
*294 Andrew J. Rothman, Newark, argued the cause for appellants/cross-respondents (Goldstein and Lem, attorneys; Mr. Rothman, on the brief).
Michael A. Spero, Princeton, argued the cause for respondents/cross-appellants (McCarthy and Schatzman, attorneys; Mr. Spero and Charly Gibbons, on the brief).
Before Judges SKILLMAN, WECKER and LESEMANN.
*293 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Plaintiff Darius Griffin is a former employee of defendant Tops Appliance City, Inc. (Tops), who was discharged for selling a big screen television set to his brother-in-law for a price below cost. Plaintiff subsequently brought this action against Tops and three of its executives, defendants Phillip M. Schmidt, Phillip J. Schoonover and Peter Huber, claiming that defendants violated the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, and breached his employment contract by discharging him. Plaintiff also asserted a claim for defamation based on statements the individual defendants made to other Tops employees concerning the reason for plaintiff's discharge. In addition, plaintiff asserted a claim for intentional infliction of emotional distress. Plaintiff's wife, Mary Griffin, joined as a plaintiff, asserting a claim for loss of consortium.
Plaintiff, who is an African American, was originally hired by Tops in 1984. During the course of his employment, plaintiff developed a close personal relationship with Tops' owner, Les Turchin.
In February of 1993, plaintiff was discharged for alleged sexual harassment of a female employee. Tops eventually paid nearly $100,000 to settle a sexual harassment action brought by this employee, and also incurred substantial legal fees in defending the action.
After plaintiff's first discharge from Tops, Turchin assisted him in obtaining new employment. Several months later, over the objections of Tops' managers, Turchin insisted that plaintiff be re-hired. As a condition of his re-hiring, plaintiff was required to see a psychologist and sign an undated letter of resignation, and Tops' managers considered him to be on probation.
Less than six months after his rehiring, plaintiff participated in the sale of a television set to his brother-in-law which resulted in his second discharge. On November 23, 1994, the brother-in-law came to the *295 Tops store in Secaucus to buy a big-screen television. Plaintiff, who was manager of the TV and Video Department, referred his brother-in-law to a salesman who worked under him. This salesman sold plaintiff's brother-in-law a floor model of a big-screen television set. Plaintiff established a $1,900 sales price for the television, which was more than $500 below cost.
A few days after this sale, the Director of the Shipping and Receiving Department informed plaintiff that Tops could not ship the floor model to his brother-in-law because he lived out-of-state and Tops could not insure a product which had been removed from its original packaging for out-of-state shipment. Plaintiff then instructed the Director of Shipping and Receiving to substitute a new television set for the floor model and to ship it to his brother-in-law, without any increase in price. When Tops' managers found out about this sale, they discharged plaintiff for a second time. According to plaintiff, Schoonover said that to obtain Turchin's approval for the discharge, he told him that plaintiff had "stole[n] from the company." The defendants also filed criminal charges against plaintiff, which were still pending when this case was tried.
At trial, plaintiff testified that he did not extend any "special treatment" to his brother-in-law, and that under similar circumstances he would have substituted a brand new television for the floor model at no additional price for any other customer. Plaintiff also testified that Tops frequently sold items below cost. However, plaintiff admitted that at the time of the sale to his brother-in-law, he was aware of another employee who had been discharged for selling below cost.
In addition, the store manager under whom plaintiff worked testified on plaintiff's behalf that because plaintiff's brother-in-law purchased a service warranty contract in addition to the television, Tops actually made a small profit on the overall transaction.[1] However, the store manager acknowledged that plaintiff violated store policy by establishing the price at which the television was sold to his brother-in-law.
At the close of plaintiffs' case, the trial court granted defendants' motion to dismiss Mrs. Griffin's loss of consortium claim and plaintiff's breach of contract claim. The court denied defendants' motion to dismiss plaintiff's LAD and defamation claims. The court did not make any explicit ruling concerning plaintiff's claim for intentional infliction of emotional distress.
At the conclusion of the trial, the court instructed the jury regarding plaintiffs' LAD and defamation claims. Although the court gave the jury no instructions regarding intentional infliction of emotional distress, it submitted a verdict sheet which set forth questions regarding not only plaintiff's LAD and defamation claims, but also his intentional infliction of emotional distress claim.
The jury returned a verdict for defendants on plaintiff's LAD claim, finding that plaintiff failed to prove he was discharged because of his race. The jury also returned a verdict in defendants' favor on plaintiff's defamation claim, finding that even though defendants' statements were defamatory, they were made for a "legitimate business purpose" and plaintiff failed to show that "1) the employer knew the statements were false or acted in reckless disregard of their truth or falsity; 2) the statements were made for a purpose that was contrary to the interests of the qualified privilege; or 3) the statements were published excessively ." However, the jury returned a verdict in plaintiff's favor on his claim for intentional infliction of emotional distress. The jury awarded plaintiff $185,000 in compensatory damages, apparently representing lost income as a result *296 of his discharge, and an additional $250,000 for emotional distress.
On defendants' post-trial motion, the court reduced the award for emotional distress to $125,000. However, the court denied defendants' motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.
On appeal, defendants argue that plaintiff's claim for intentional infliction of emotional distress could not survive independent of his LAD and defamation claims and that plaintiff did not present any evidence which could support a jury verdict in his favor on that claim. In the alternative, defendants seek a new trial because the jury returned a verdict for intentional infliction of emotional distress without receiving any instructions regarding the elements of this tort. Defendants also argue that even as reduced by the trial court, plaintiff's damages award was excessive. Plaintiff cross-appeals from the reduction of the damages award, but does not challenge the jury verdict in defendants' favor on the LAD and defamation claims.
If plaintiff had presented sufficient evidence to support a jury verdict for intentional infliction of emotional distress, a new trial would be required because the jury returned a verdict for plaintiff without receiving any instructions from the court regarding this claim. However, we conclude that plaintiff presented insufficient evidence to support a verdict for intentional infliction of emotional distress. Accordingly, the judgment for plaintiff must be reversed and his complaint dismissed. This disposition makes it unnecessary to consider the parties' arguments regarding the amount of the damages award to plaintiff.
This State recognizes the tort of intentional infliction of emotional distress. See Taylor v. Metzger, 152 N.J. 490, 508-21, 706 A.2d 685 (1998); Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 365-66, 544 A.2d 857 (1988). To prevail on such a claim,
the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.
Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." By circumscribing the cause of action with an elevated threshold for liability and damages, courts have authorized legitimate claims while eliminating those that should not be compensable.
[Buckley, supra, 111 N.J. at 366-67, 544 A.2d 857 (citations omitted).]
Our courts have found this "elevated threshold" to be satisfied only in extreme cases. Conduct has been found sufficiently outrageous to support a claim for intentional infliction of emotional distress when a landlord failed to provide central heating, running water and reasonable security in a rent controlled building in an effort to induce the tenants to vacate, 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J.Super. 449, 455-57, 466, 471-75, 547 A.2d 1134 (App.Div.1988); when a doctor allegedly told a child's parents that he was "suffering from a rare disease which may be cancerous knowing that the child has nothing more than a mildly infected appendix," Hume v. Bayer, 178 *297 N.J.Super. 310, 319, 428 A.2d 966 (Law Div.1981); and when an employer referred to an African American employee as a "jungle bunny" Taylor, supra, 152 N.J. at 508-21, 706 A.2d 685. On the other hand, our courts have rejected intentional infliction of emotional distress claims based on an employer's alleged denial of promotions and ultimate termination of an employee based on his age, McDonnell v. Illinois, 319 N.J.Super. 324, 332, 342, 725 A.2d 126 (App.Div.1999), aff'd on unrelated grounds, 163 N.J. 298, 748 A.2d 1105, cert. denied, ____U.S.____, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000); a police department's demand that an officer undergo a "fitness for duty" examination, which included drug testing and psychological evaluation, as a condition of returning to work after a domestic violence incident, Hart v. City of Jersey City, 308 N.J.Super. 487, 491-92, 706 A.2d 256 (App.Div.1998); and a wife's eleven year adulterous affair with her boss, Ruprecht v. Ruprecht, 252 N.J.Super. 230, 236-38, 599 A.2d 604 (Ch.Div. 1991).
Except for the kind of aggravated discriminatory conduct involved in Taylor, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988), cert. denied, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); see also GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612-13 (Tex.1999); "`[W]hile loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event' and cannot provide a basis for recovery for infliction of emotional distress." Cox, supra, 861 F.2d at 395 (quoting Brieck v. Harbison-Walker Refractories, 624 F.Supp. 363, 367 (W.D.Pa. 1985), aff'd in relevant part, 822 F.2d 52 (3d Cir.1987)). Consequently, an ulterior motive for discharging an employee, such as personal dislike, does not by itself provide a sufficient foundation for finding the level of outrageousness required to support this cause of action. See id. at 396; see also Johnson v. Merrell Dow Pharms., Inc., 965 F.2d 31, 33-34 (5th Cir.1992).
Furthermore, a plaintiff may not pursue a claim for intentional infliction of emotional distress to circumvent the required elements of or defenses applicable to another cause of action that directly governs a particular form of conduct. See Decker v. Princeton Packet, Inc., 116 N.J. 418, 432, 561 A.2d 1122 (1989). The jury in this case rejected plaintiff's defamation claim because defendants established a legitimate business purpose for the alleged defamatory statements made to other Tops' employees. Plaintiff cannot avoid the qualified privilege extended to such statements by relying upon them as a basis for an intentional infliction of emotional distress claim. See ibid.; LoBiondo v. Schwartz, 323 N.J.Super. 391, 416-17, 733 A.2d 516 (App.Div.), certif. denied, 162 N.J. 488, 744 A.2d 1211 (1999); Salek v. Passaic Collegiate Sch., 255 N.J.Super. 355, 361, 605 A.2d 276 (App.Div.1992).
Similarly, plaintiff could not rely upon the fact that the defendants had filed a criminal complaint against him as a basis for a finding of intentional infliction of emotional distress, because such conduct is the specific subject of the tort of malicious prosecution. To establish a malicious prosecution claim, a plaintiff must show, among other things, that the criminal complaint "terminated favorably" to him. Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975). Since the criminal complaint against plaintiff was still pending when this case was tried, plaintiff could not show that it had been "terminated favorably" to him and thus he did not yet have a viable cause of action for malicious prosecution. Consequently, plaintiff could not rely upon the criminal prosecution to support an intentional infliction of emotional distress claim.
Apart from defendants' alleged defamatory statements and initiation of *298 criminal proceedings against plaintiff, there is no basis for a finding that defendants' conduct in discharging plaintiff was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley, supra, 111 N.J. at 366, 544 A.2d 857 (quoting Restatement (Second) of Torts, § 46 comment d (1965)). At most, plaintiff's evidence could support a finding that Tops' managers incorrectly characterized plaintiff's role in the sale of the television set to his brother-in-law as "stealing" or "embezzlement" to dissuade the owner of the company from interfering with their decision to discharge him. However, the jury rejected plaintiff's defamation claim. Plaintiff's evidence also could support a finding that the managers' personal dislike of plaintiff was a motivating factor in their decision to discharge him. However, plaintiff was an at-will employee who could be discharged with or without cause, so long as Tops' actions did not violate the LAD or other similar legislation, see Erickson v. Marsh & McLennan Co., 117 N.J. 539, 560, 569 A.2d 793 (1990), and the jury expressly found that plaintiff's discharge was not based on his race. Moreover, it is undisputed that plaintiff's role in establishing the price at which the television set would be sold to his brother-in-law violated Tops' policy relating to sales to employees' relatives. Therefore, plaintiff's proofs fell far short of showing the degree of outrageous required to support an intentional infliction of emotional distress claim.
Plaintiff also failed to present evidence which could support a finding that the emotional distress he suffered as a result of defendant's conduct was "so severe that no reasonable man could be expected to endure it." Buckley, supra, 111 N.J. at 366, 544 A.2d 857 (quoting Restatement, supra, § 46 comment j). To establish this element of an intentional infliction of emotional distress claim, a plaintiff must show a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so...." Taylor, supra, 152 N.J. at 515, 706 A.2d 685 (quoting Poole v. Copland, Inc., 125 N.C.App. 235, 481 S.E.2d 88, 93 (1997)). Thus, the plaintiff's testimony in Buckley that he "was aggravated[,] ... embarrassed[,] ... developed headaches" and "lost sleep" was found insufficient to satisfy this requirement. 111 N.J. at 368, 544 A.2d 857. Similarly, in Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J.Super. 337, 354, 633 A.2d 985 (App.Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994), we concluded that plaintiff's "allegations relating to aggravation, embarrassment, minor headaches and loss of sleep" were not "sufficiently severe" to support an intentional infliction of emotional distress claim. See also Schillaci v. First Fidelity Bank, 311 N.J.Super. 396, 406-07, 709 A.2d 1375 (App.Div.1998).
Plaintiff's proofs concerning his emotional distress were similar to the evidence found insufficient in Buckley and Morgan. Plaintiff testified that after he was discharged, he felt "terrible." He further testified that he "felt bad" because he "could not provide the Christmas and the holiday that was planned." His wife testified that plaintiff was "devastated" by his second discharge and that "[h]is whole personality changed." However, plaintiff did not show even through his own testimony that he had headaches, difficulty in sleeping or an incapacity to perform his normal daily routine, or that his emotional upset continued for any substantial period of time following the discharge. Most significantly, plaintiff did not seek any medical assistance for his alleged emotional distress or present any expert medical opinion to show he suffered severe psychological effects as a result of his discharge. Therefore, plaintiff failed to show that he suffered any greater emotional distress than a person ordinarily would experience as a result of the loss of a job.
*299 Accordingly, the judgment in plaintiff's favor is reversed and the complaint is dismissed.
NOTES
[1] This assertion was disputed by Tops' Vice President of Stores, who testified that the transaction resulted in a net loss of $208.15, even after taking into account the profit from the sale of the service warranty contract.