

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2009

# Christopher Byrd v. Fed Express Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2015

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Christopher Byrd v. Fed Express Corp" (2009). *2009 Decisions.* Paper 1701.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1701

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2015
_____

CHRISTOPHER BYRD,

Appellant

v.

FEDERAL EXPRESS CORP.;
CONCENTRA MEDICAL CENTER,

Appellee.


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-05-cv-02648)
District Judge: Honorable Robert B. Kugler

_____

Submitted Under Third Circuit LAR 34.1(a)
March 3, 2009

Before: SCIRICA, *Chief Judge*, SLOVITER and HARDIMAN, *Circuit Judges*.

(Filed: March 24, 2009)


_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Christopher Byrd appeals the District Court's grant of summary judgment in favor of Federal Express Corporation (FedEx). We will affirm.

I.

Because we write exclusively for the parties, we recount only the facts necessary to our decision.

Byrd began working as a courier for FedEx on July 24, 1995 and became a senior customer service agent in 1998. Byrd is a diabetic and has received treatment for alcohol dependency. On February 9, 2001, Byrd reported to FedEx that he had an alcohol problem. Pursuant to FedEx's Alcohol and Drug Free Workplace Policy (Policy), Byrd took an authorized leave of absence to seek treatment. FedEx informed Byrd that his leave of absence was protected under the Family and Medical Leave Act (FMLA) until it was exhausted on February 20, 2001. Byrd was also advised that he could not return to work until he received clearance from a FedEx medical review officer (MRO).

Pursuant to the Policy, Byrd was required to execute a Statement of Understanding (SOU) before returning to work. The SOU is, in effect, a "last chance" agreement and failure to comply with the SOU triggers disciplinary action, including possible termination. Byrd executed the SOU on April 5, 2001 and returned to work on April 9, 2001, after FedEx's MRO cleared him for reinstatement. The SOU required Byrd to

2

undergo random alcohol testing at the behest of FedEx. Between May 25, 2001 and February 24, 2003, Byrd was tested eighteen times and passed each test.

On April 7, 2003, FedEx required Byrd to report to Concentra Medical Center (Concentra) for a follow-up test pursuant to the Policy. Byrd's initial test indicated a blood alcohol content of .072. Byrd then submitted to a confirmation test, which resulted in a blood alcohol content of .061. Byrd denied having used any alcohol and contested the test results; nonetheless, FedEx suspended him temporarily. Byrd requested a blood alcohol screen, but FedEx denied his request. Byrd later obtained a letter from his primary care physician, who believed that the test was a false positive caused by Byrd's diabetes. Byrd's physician opined that ketoacidosis, a condition associated with diabetes, can cause a false positive.

As a result of the positive alcohol tests, FedEx terminated Byrd's employment on April 11, 2003. Byrd sued FedEx in state court claiming violations of the New Jersey Law Against Discrimination (NJLAD) and alleging intentional and negligent infliction of emotional distress. After FedEx removed the case to the United States District Court for the District of New Jersey, Byrd amended his complaint to add claims for violations of the Family Medical Leave Act (FMLA) and other state law claims that are not relevant to this appeal.

The District Court granted FedEx summary judgment on all claims and Byrd filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

3

II.

Byrd raises various arguments on appeal. First, Byrd claims that an issue of material fact existed as to the cause of his positive alcohol test such that his NJLAD claim should have proceeded to trial. Byrd also argues that FedEx's Policy discriminates against persons with addictions in violation of the NJLAD by requiring them to submit to testing, while other employees are not subject to the same requirement. As for his federal claim, Byrd asserts that summary judgment was improper under the FMLA because disputed issues of material fact exist regarding the date he returned to work. Finally, Byrd argues that material issues of fact exist on his claims for negligent and intentional infliction of emotional distress. For the reasons that follow, we find none of Byrd's arguments persuasive.

A.

To prevail under the NJLAD, Byrd must show that FedEx's adverse employment decision not only was wrong, but that the company acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.2d 265, 283 (3d Cir. 2001). Even assuming, *arguendo*, that Byrd's positive alcohol tests were erroneous, this fact would not be material. FedEx had no hand in the testing, which was performed by an independent company, Concentra. FedEx was entitled to accept at face value the results of Concentra's testing of Byrd. Accordingly, we agree with the District Court's conclusion

that the record is devoid of evidence from which Byrd could satisfy his burden of showing pretext under *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

It is unfortunate for Byrd that the nineteenth time he was tested, the results came back positive. But this does not change the fact that FedEx had a clear policy for employees who, like Byrd, voluntarily report alcohol abuse. By signing the SOU, Byrd was well aware that his employment at FedEx was conditioned on follow-up testing, and that a positive test could result in termination.[1]

## B.

Byrd also argues that the SOU he was required to sign violates the NJLAD because it treats employees with alcohol or substance abuse problems differently from employees suffering from other ailments. We do not reach the merits of this argument, however, because Byrd brought this claim on April 8, 2005, more than four years after signing the SOU on April 5, 2001 and more than two years after his last alcohol test. Accordingly, the District Court correctly held that Byrd's claim that the SOU violates the NJLAD is time-barred. *Montells v. Haynes*, 627 A.2d 654, 655 (N.J. 1993) (holding that the NJLAD requires that claims be brought within two years of a violation).

---

[1]Byrd's argument that his positive test was caused by the inhalation of diesel fumes is questionable in light of the fact that Byrd passed eighteen previous tests while working under similar conditions. Even if diesel fumes had been the true cause of the failed alcohol test, this would mean only that FedEx's termination decision was erroneous, not discriminatory.

C.

Byrd next argues that the District Court erred in granting FedEx's motion for summary judgment on his FMLA claim because the date he returned to work is a material fact in dispute. The FMLA provides that an employee with a serious health condition who is unable to perform the functions of his employment is entitled to twelve weeks of unpaid leave during a twelve month long period. 29 U.S.C. § 2612(a)(1)(D). Upon returning from FMLA leave, the employee is reinstated to his former position and resumes his prior duties. 29 U.S.C. § 2614(a)(1). Of course, if an employee returns to work after the FMLA leave expires, he loses its protection. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004).

The District Court found that Byrd's FMLA protection expired on February 20, 2001. Byrd argues that he was discharged from alcohol treatment and was ready to return to work on February 19, 2001, a day before his FMLA leave expired. The evidence in the record supports the District Court's determination that Byrd did not return to work until April 9, 2001. Indeed, Byrd did not receive clearance from the MRO until April 5, 2001.

Instead of challenging directly the District Court's determination that he returned to work on April 9, 2001, Byrd asserts that FedEx delayed his return to work because FedEx refused to reinstate him until he obtained clearance from the MRO. Although this is factually accurate, Byrd was on notice that the approval of FedEx's MRO was a condition precedent to his reinstatement.

6

Byrd also argues that FedEx interfered with his FMLA rights not only when he signed the SOU and agreed to random alcohol testing as a condition of continued employment, but also each time that he was required to submit to an alcohol screen after his reinstatement. The continued violations, according to Byrd, violated his FMLA rights because they placed Byrd in a worse position than he enjoyed prior to taking his leave of absence.

We find that the District Court did not err when it entered judgment for FedEx on Byrd's FMLA claims. Significantly, Byrd fails to cite even a single case in support of his FMLA arguments. When Byrd returned to work on April 9, 2001, he was fully reinstated to a position equivalent to that which he enjoyed prior to his leave of absence. Accordingly, FedEx was entitled to judgment on this claim.

## C.

Like his other arguments, Byrd asserts that issues of material fact exist regarding his claims for negligent and intentional infliction of emotional distress. We find that the District Court did not err in this regard because Byrd did not produce sufficient evidence to create a genuine issue of material fact as to whether or not he suffered emotional distress. In New Jersey, it is well established that it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Griffin v.*

*Tops Appliance City, Inc.*, 766 A.2d 292, 297 (N.J. Super. Ct. App. Div. 2001) (quoting

*Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).

We agree with Byrd that a finding of intentional infliction of emotional distress requires him to show that: (1) FedEx engaged in extreme and outrageous conduct; (2) FedEx intended to cause injury to Byrd or knew or should have known that its conduct would likely cause Byrd to experience emotional distress; (3) FedEx's conduct proximately caused Byrd's damages; and (4) Byrd's distress was severe. *Buckley v. Trenton Savings Fund Society*, 544 A.2d 857, 863-64 (N.J. 1988). Nevertheless, we find that Byrd has failed to proffer sufficient evidence to support any of the four required elements. Rather, FedEx had a nondiscriminatory "last chance" policy in place for individuals who self-reported alcohol problems. That policy made clear that one's employment would be conditioned on follow-up testing for alcohol abuse. Byrd voluntarily signed the SOU containing the facts to that effect. Thus, Byrd cannot plausibly argue that FedEx intentionally or negligently inflicted distress upon Byrd by terminating him pursuant to the terms of the SOU.

Accordingly, we find that the District Court did not err in dismissing Byrd's emotional distress claims.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

8