**Hector SANCHEZ, Appellant**

v.

**SUNGARD AVAILABILITY SERVICES LP; Fidel Cardenas.**

**No. 09–2713.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 26, 2010.

Filed: Jan. 28, 2010.

Hector Sanchez, Fair Lawn, NJ, pro se.

Sean P. Lynch, Esq., Richard G. Rosenblatt, Esq., Morgan, Lewis & Bockius, Princeton, NJ, for Sungard Availability Services LP and Fidel Cardenas.

Before: RENDELL, HARDIMAN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Appellant Hector Sanchez appeals from a decision of the District Court granting Defendants' motion for summary judgment. For the reasons set forth below, we will affirm the judgment of the District Court.

## I.

Sanchez is a former employee of Sun-Gard Availability Services, L.P. ("Sun-Gard"). He was hired as a Senior Software Specialist in 1999. The following month, Sanchez was given a copy of Sun-Gard's Employee Handbook and he signed an Employee Acknowledgment that explicitly outlined his status as an at-will employee. While at SunGard, Sanchez was directly supervised by Fidel Cardenas ("Cardenas"). Sanchez, who is originally from the Dominican Republic, claims that Cardenas, a Cuban–American, made various disparaging remarks about his nationality. In his Complaint, Sanchez described six specific incidents over the course of his six-year tenure at the company in which his nationality served as the basis for discriminatory comments.[1]

In January 2005, Sanchez was terminated from SunGard. SunGard contends that he was terminated for non-discriminatory reasons. In support of that argument, SunGard points to three incidents in which Sanchez clashed with Cardenas and other SunGard employees during the month before his termination. In December 2004, Cardenas reprimanded Sanchez for failing to carry out his duties, stating in an email to Sanchez that he did not approve of his sitting at his desk while other employees were hard at work. Second, during the first week of January 2005, Sanchez was involved in a verbal altercation with a co-worker. Cardenas was forced to intervene. The final incident, which SunGard claims led directly to Sanchez's discharge, occurred on January 10, 2005. That day, Sanchez arrived at the SunGard facility at approximately 6:15 a.m., but found that his electronic security key did not work. He was unable to access the building. After

being admitted into the building by a co-worker, Sanchez had problems accessing a different area in the facility due to his malfunctioning key. Approximately twenty minutes later, Sanchez left his key with security personnel, told them to call him when they had fixed the problem, and went home. Sanchez received a call from SunGard at noon requesting that he return to work. When he did so, he was informed by Cardenas that he was being terminated for insubordination and leaving the facility without prior authorization.

Following the termination of his employment on January 10, 2005, Sanchez filed a Complaint in the Superior Court of New Jersey alleging that Cardenas discriminated against him on the basis of his nationality and that SunGard fired him in retaliation for complaining about that discrimination. On the basis of those allegations, Sanchez asserted claims for: (1) retaliatory discharge and the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD"); (2) infliction of emotional distress; (3) breach of contract for reasons of race and national origin; (4) unequal payment in contravention of the Equal Pay Act; (5) breach of implied contract of employment; (6) violation on the part of SunGard of the "progressive disciplinary system established by its own policies, procedures, and practices;" and (7) breach of implied covenant of good faith and fair dealing. Based on the federal nature of Sanchez's Title VII claims, Defendants removed the case to the District Court in August 2006.

At the close of discovery, Defendants moved for summary judgment on all of

---

1. Sanchez also claimed for the first time in his brief opposing Defendants' summary judgment motion that Cardenas also sent several racist emails to him about African–Americans and Arab people.

Sanchez's claims. After reviewing the parties' arguments, the District Court determined that Sanchez's allegations of discrimination, even when viewed in their strongest possible light, did not rise to the level of severity or pervasiveness required to sustain a hostile work environment claim under Title VII or the NJLAD. Furthermore, the District Court found that SunGard articulated legitimate reasons for Sanchez's termination, and Sanchez was unable to demonstrate that those reasons were a pretext for discriminatory purposes. The District Court also found that Sanchez failed to produce evidence of sufficiently outrageous activity on the part of the Defendants to support his claim for infliction of emotional distress. Lastly, the District Court dismissed the remainder of Sanchez's claims because they were premised on the existence of an employment contract and it was undisputed that no such contract existed. Sanchez filed a timely appeal from the District Court's determination.

## II.

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir.2005). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir.1995). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005).

## III.

After a careful review of the record, we find that the District Court properly entered summary judgment in favor of Defendants on all of Sanchez's claims.

### Title VII and NJLAD Claims

#### Hostile Work Environment

■ The District Court dismissed Sanchez's hostile work environment and retaliation claims because he was unable to establish a prima facie case on either claim. With regard to a hostile work environment claim, this Court has articulated factors that must be proven in order to establish the existence of an actionable hostile work environment under Title VII. A plaintiff must prove: (1) that he suffered intentional discrimination because of his race or national origin; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996).[2]

In employing this analysis, a court must evaluate the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unrea-

---

2. We have held that the elements for a hostile work environment claim under NJLAD "closely resemble the first four elements of [a] Title VII hostile work environment claim." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir.2001). Accordingly, the reasoning we apply regarding Sanchez's Title VII claim applies to his NJLAD claim as well.

sonably interferes with an employee's work performance. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Title VII is not violated by "[m]ere utterance of an ... epithet which engenders offensive feelings in an employee" or by mere "discourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

The District Court correctly ruled that under the totality of the circumstances, any discrimination was not sufficiently severe or pervasive to support a hostile work environment claim. Sanchez alleges that Cardenas made several derogatory comments relating to Sanchez's Dominican nationality over a period of six years. During that time, Sanchez also received three racially-charged emails. However, none of the content in the emails implicated Sanchez's own nationality or any other protected trait. Furthermore, he admitted that he did not report the emails or seek redress under the company's non-discrimination policy and, on at least one occasion, responded to an email from Cardenas without acknowledging the allegedly-discriminatory comments contained therein.

With regard to the alleged discriminatory comments made by Cardenas implicating Sanchez's nationality, upon review, we agree with the District Court that they did not reach a level of sufficient severity or pervasiveness to alter the conditions of his employment. *See Faragher,* 524 U.S. at 787, 118 S.Ct. 2275. There is no evidence in the record that the complained-of conduct ever interfered with Sanchez's ability to do his work. To the contrary, Sanchez stated that he was "routinely applauded for his great teamwork and willingness to both come in early and stay beyond his normal working hours in order to satisfy the company and its clients." (Complaint at ¶ 1.) Moreover, Sanchez does not assert that he was physically threatened by the comments. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367. Therefore, while we agree that the comments may have been inappropriate, there is insufficient evidence in the record to suggest that the a reasonable jury could conclude that the comments, when considered cumulatively, were sufficiently severe or pervasive. Accordingly, the District Court properly granted summary judgment on this claim.

### Retaliatory Discharge

■ The District Court also properly granted summary judgment in favor of Defendants on Sanchez's claim of retaliatory discharge. In order to establish a prima facie case of retaliatory discharge under Title VII or the NJLAD, Sanchez must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Moore v. City of Philadelphia,* 461 F.3d 331, 340–41 (3d Cir. 2006); *Tartaglia v. UBS PaineWebber Inc.,* 197 N.J. 81, 961 A.2d 1167, 1192 (2008).

Sanchez's retaliation claim is based entirely upon his alleged experiences during a January 7, 2005 lunch with several of his co-workers at SunGard, which he claims led to his dismissal. During the lunch, Sanchez claims that he reported to co-workers that he was being discriminated against, harassed, and bullied. However, none of Sanchez's colleagues was able to recall the incident, nor is there any evidence to suggest that Cardenas was ever told of Sanchez's alleged comments. As mentioned earlier, Sanchez does not allege that he ever reported any of the other comments made by Cardenas regarding

his nationality during his six-year employment with SunGard.

First, we agree with the District Court that the alleged remark Sanchez made to his co-workers during lunch was too vague to constitute protected activity. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995) (holding that complaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute "protected activity"). Moreover, because the individuals who were responsible for deciding to discharge Sanchez were unaware of his complaints of discrimination, Sanchez has failed to establish a causal connection between his termination and his alleged reporting the discrimination. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir.1999) (affirming a grant of summary judgment on a retaliation claim under Title VII where there was no evidence that the principals who made the decision to fire the plaintiff were aware of the protected action). Summary judgment was therefore appropriate as Sanchez failed to establish a prima facie case of retaliatory discharge.[3]

### Infliction of Emotional Distress

█ We also agree with the District Court that there is insufficient record evidence to sustain Sanchez's claim of infliction of emotional distress. In New Jersey, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Griffin v. Tops Appliance City, Inc.*, 337 N.J.Super. 15, 766 A.2d 292, 297 (N.J.Super.Ct.App.Div.2001). The distress suffered by the plaintiff must be so severe that "no reasonable man could be expected to endure it." *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 544 A.2d 857, 863 (1988). Having concluded that the District Court properly determined that the alleged discriminatory comments made by Cardenas were not so severe or pervasive as to alter the conditions of Sanchez's employment, we agree with the District Court's further assessment that the comments, although inappropriate, were not sufficiently outrageous in character to sustain a claim for infliction of emotional distress.

### Unequal Payment

█ Sanchez also claims that SunGard compensated him at a lesser rate than similarly situated employees in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d). The District Court correctly concluded that Sanchez failed to set forth any evidence that he was paid less than similarly-situated female employees at SunGard. *See Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir.2000).

### Contract Claims

Sanchez's remaining claims—breach of contract for reasons of race and national origin, breach of implied contract of employment, violation on the part of SunGard of the "progressive disciplinary system established by its own policies, procedures and practices," and breach of implied covenant of good faith and fair dealing—were

---

**3.** We note that even if Sanchez could establish a prima facie case of retaliation, he would be unable to demonstrate that SunGard's stated reason for terminating his employment was pretextual. SunGard presented substantial evidence that Sanchez's termination was motivated by non-discriminatory consider-

ations. Specifically, during the month before his termination, Sanchez was reprimanded for dereliction of his duties and was involved in an altercation with a co-worker. On the day he was terminated, he left work without authorization.

also properly dismissed.[4] As the District Court correctly noted, it is undisputed that Sanchez was an at-will employee and that no employment contract between the parties existed. Summary judgment was therefore appropriate.

4. Sanchez claims that the District Court failed to consider all of the claims in his Complaint. A review of Sanchez's Complaint shows that the District Court properly considered and reviewed all of the claims set forth in the Complaint.