**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1951
_____

JUDITH MORAN,

Appellant

v.

DAVITA INC., a Delaware Corporation;
JAVIER RODRIGUEZ
_____

On Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 3-06-cv-05620)
District Judge:  Hon. Joel A. Pisano

Argued January 25, 2011

Before:  FUENTES, CHAGARES, <u>Circuit Judges</u>, and POLLAK,<sup>*</sup> <u>District Judge</u>.

(Filed August 8, 2011)

Timothy P. Beck, Esq. (Argued)
DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, P.C.
15 Mountain Blvd.
Warren, New Jersey 07059

        <u>Counsel for Appellant</u>

---

<sup>*</sup> The Honorable Louis H. Pollak, Senior District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Matthew H. Adler, Esq. (Argued)
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103

Amy G. McAndrew, Esq.
Pepper Hamilton
899 Cassatt Road
400 Berwyn Park
Berwyn, PA 19312

Michael T. Pidgeon, Esq.
Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543

Counsel for Appellees

_____

OPINION
_____

CHAGARES, Circuit Judge.

Judith Moran appeals the District Court's grant of summary judgment on her claims for post-termination employer retaliation, intentional infliction of emotional distress, and breach of contract relating to her stock options. For the reasons that follow, we will affirm the judgment of the District Court with regards to Moran's claims of retaliation and intentional infliction of emotional distress and vacate the judgment with regard to her stock option claim and remand it for further proceedings.

I.

We write for the parties' benefit and recite only the facts essential to our disposition. In 2005, DaVita, a dialysis service provider, acquired the company Gambro for whom Moran was a Regional Vice President. As part of the acquisition, DaVita honored Moran's employment contract with Gambro. The Employment Agreement provided:

> Either [DaVita] or Judith E. Moran may terminate Judith E. Moran's employment hereunder at any time with or without cause, by giving not less than six months prior written notice to the other party. The employment expires following said six months period of notice.
>
> ***
>
> [DaVita] is at all times entitled to immediately remove Judith E. Moran from [her] employment duties, but with unaltered benefits for Judith E. Moran during the period of notice. Any vacation entitlement shall be utilized during the period of notice at the request of [DaVita].

Appendix ("App.") 253-54. The Employment Agreement also included a twelve-month severance package in addition to a one-year non-compete provision. Additionally, Moran participated in a stock option plan which permitted her to purchase stock options at a set price after the options vested on October 31, 2006.

After the acquisition, Moran began working with Javier Rodriguez, a member of DaVita's executive team. Moran found that Rodriguez was critical of women's appearances, dismissive of her comments, and more supportive of the men on the executive team. Generally, Moran felt there was a lack of female presence on the leadership team. In March 2006, Moran met with Rodriguez to discuss her bonus. Rodriguez informed Moran at this time that her employment would be terminated

3

because the company was not satisfied with her performance, specifically citing problems with locations in Massachusetts and difficulties Moran experienced during the budget process.

On May 2, 2006, Rodriguez provided Moran with her notice of termination. The notice indicated that the effective date of the termination would be six months from the date of the memo. The notice also informed Moran that

> [p]rior to that date, you will receive a Severance Agreement that you will be required to sign in order to receive the severance provided under your Employment Agreement. Please note that, as a result of recently enacted federal law and corresponding federal regulations, we cannot actually begin paying your severance until six months after the end of your employment – if we did, your severance would be subject to a 20 percent, non-deductible, excise tax. I am advising you of this now so that you can make the necessary preparations.

App. 318. DaVita believed that this withholding of pay was necessary based on the unsettled IRS statute, 26 U.S.C. § 409A ("Section 409A"). Moran continued to perform her duties under her employment contract after receiving the notice of termination. Moran's last day of work at DaVita was June 16, 2006.

On June 16, 2006, DaVita issued to Moran a Severance and General Release Agreement (the "Release") which required her to release any claims against DaVita, including those under Title VII of the Civil Rights Act and New Jersey's Law Against Discrimination. In return, Moran would receive additional consideration compared to what she would have received under her Employment Agreement. The Release stated the effective date of termination was June 16, 2006 and required Moran's execution in order

4

to receive any severance and notice pay immediately. Specifically, the Release stated: "Moran hereby acknowledges that in order to receive the severance set forth below, she must execute this agreement, and if she does not execute this agreement, then she is not entitled to any severance payment under any agreement, company policy or applicable law." App. 405. Moran never executed the Release. DaVita discontinued her wages and benefits and did not begin payments on her severance. Moran retained counsel and by letter on June 30, 2006, made a demand for reinstatement of her benefits.

At about the same time, DaVita also terminated the employment of Robert Oldfield and Donald Beuerle and offered both employees the same Release. After the employees questioned the Section 409A six-month hold back period, DaVita determined that Oldfield and Beuerle most likely fell into an exception in the statute. Oldfield and Beuerle were required to execute a release without Section 409A deferral language. After signing the release, both employees received their severance.

On October 11, 2006, Moran filed suit against DaVita and Rodriguez (hereinafter collectively referred to as "DaVita") for discrimination, breach of contract and retaliation, among other claims. On December 30, 2006, DaVita made two deposits totaling $92,218.47, accounting for the remainder of Moran's notice pay that had been withheld for six months and the first of her severance payments. However, on January 11, 2007, DaVita attempted to reverse this amount. DaVita was only able to retrieve two amounts totaling $8,673.97 from Moran's bank account which were later restored on April 21,

5

2007. Despite this reversal, DaVita paid Moran her severance on a timely basis through October 2007. Moran has been paid in full for her notice period wages and severance.

On March 23, 2009, the District Court granted summary judgment to DaVita on all counts except for Moran's claims for benefits. On March 4, 2010, the District Court adopted the Magistrate Judge's findings that DaVita owed Moran $2,746.69 in benefits. Moran filed a timely notice of appeal.

II.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have applied. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our analysis, we must view the record in the light most favorable to Moran, and must draw all reasonable inferences in her favor. See Vitalo, 399 F.3d at 542. To defeat summary judgment, however, Moran must "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

III.

6

Moran limits her appeal to the denial of her retaliation claim, her allegation for intentional infliction of emotional distress, and a breach of contract claim as it relates to her stock options. Moran contends that after she received her notice of termination DaVita retaliated against her by withholding her pay and benefits because she objected to and failed to execute the Release. She alleges further that DaVita's offering of the Release and the subsequent delay in payment was intended to cause her severe emotional distress. Additionally, Moran maintains that DaVita violated her Employment Agreement by preventing her from exercising her stock options.

## A.

Moran alleges that post-termination DaVita retaliated against her in violation of New Jersey's Law Against Discrimination ("NJLAD") by (1) asking her to sign a release agreement to receive her severance which threatened to deny her any severance under any agreement, company policy or applicable law if she failed to consent; (2) by delaying her severance and notice payments by six months based on Section 409A; (3) by depositing, reversing and then re-depositing payments into her bank account; and (4) by delaying reimbursement for expenses incurred at a Las Vegas team meeting.

NJLAD contains an anti-retaliation provision which provides that it is an unlawful employment practice:

> [f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in proceedings under this

7

act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J. Stat. Ann. § 10:5-12(d). To maintain a prima facie case of employer retaliation under NJLAD, a plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Lawrence v. Nat'l Westminster Bank, 98 F.3d 61, 71 (3d Cir. 1996) (citing Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995)). Once a plaintiff establishes a prima facie case of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for its actions. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). If a legitimate, non-retaliatory reason is proffered, then the plaintiff must show evidence of the employer's discriminatory motive, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive. Romano, 665 A.2d at 1142. To avoid summary judgment, the plaintiff's evidence must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find [these reasons] unworthy of credence, . . . and hence, infer that the employer did not act for the asserted non-discriminatory reasons." Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994)) (quotation marks omitted).

8

We hold that Moran has failed to establish a claim for retaliation under NJLAD. Moran's contention that the offering of the Release was retaliation per se is unsupported and unpersuasive. Further, Moran has not demonstrated the requisite elements for a prima facie case of retaliation. Even assuming that a prima facie case can be established, DaVita has proffered a legitimate, non-retaliatory reason for its actions based on Section 409A and Moran has failed to show this reason was a pretext for discrimination.[1] As to Moran's claim about delayed reimbursement, DaVita again proffered a legitimate, non-retaliatory reason – DaVita's concern that Moran had overcharged the company, which prompted the need to audit her expense report – and Moran has similarly failed to show this reason was a pretext for discrimination. Therefore, we conclude that Moran's retaliation claim has no merit and will affirm the District Court's grant of summary judgment as to her retaliation claim.

## B.

Moran alleges that DaVita's act of offering her an unlawful Release and its delay in distributing her payments constitute outrageous behavior that were intended to cause her severe emotional distress. In New Jersey, to recover under a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to

---

[1] Moran also appeals the District Court's denial of her motion to strike DaVita's Section 409A defense. We conclude that there was no error in the District Court's ruling that "to eliminate a defense at this late stage in the litigation, after summary judgment motions have been filed and briefed, would be highly prejudicial to [DaVita]." App. 46; see McKenna v. City of Philadelphia, 582 F.3d 447, 460 (3d Cir. 2009) (noting that evidentiary rulings are reviewed under an abuse of discretion standard).

cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional stress was severe. Buckley v. Trenton Sav. Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988). Such conduct must be particularly "'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" 49 Prospect St. Tenants Assoc. v. Sheva Gardens, Inc., 547 A.2d 1134, 1145 (N.J. App. Div. 1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." Id. Moreover, the emotional stress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." Buckley, 544 A.2d at 863. As we have noted, and New Jersey courts have confirmed, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); Griffin v. Tops Appliance City, Inc., 766 A.2d 292, 297 (N.J. App. Div. 2001).

We conclude that Moran has failed to establish a claim for intentional infliction of emotional distress. We agree with the District Court that the conduct alleged does not rise to the level of outrageous behavior that is intolerable in civilized society. Therefore, we will affirm the District Court's grant of summary judgment as to Moran's claim for intentional infliction of emotional distress.

10

C.

Moran argues that the District Court erred by denying her claim for damages stemming from her inability to exercise her stock options. The District Court held that Moran was disqualified from exercising her stock options -- which did not vest until October 31, 2006 -- because it found that DaVita did not breach its Employment Agreement with Moran by terminating her on June 16, 2006.

The language of the Employment Agreement required DaVita to provide Moran with a six-month period of notice after notice of termination was served. Since Moran received her notice of termination on May 2, 2006, her notice period of employment continued until November 2, 2006. While the Employment Agreement provided that during this notice period DaVita was entitled to "remove" Moran from her employment duties, we conclude that removal of Moran does not equate to the "termination" of her employment; removal only allowed DaVita to extinguish Moran's obligation to continue performing her employment duties. As such, Moran's termination date under her Employment Agreement was November 2, 2006, not the date of her removal, June 16, 2006, and thus, Moran had until November 2, 2006 to exercise her stock options. Since her stock options vested on October 31, 2006, Moran should have been permitted to exercise timely her vested stock options. As a result, we will vacate the District Court's judgment regarding this claim.

To sustain a claim for damages, Moran must provide evidence as to the date on which she would have exercised her options. Although she made no attempt to exercise

11

her options, Moran maintains that she would have exercised her options on October 31, 2006. The District Court may find this argument persuasive in light of the timing of Moran's inquiry regarding her stock options and DaVita's lack of response. After her notice of termination, Moran inquired of DaVita to no avail: "Given my termination date of November 2, 2006, please verify that I will be able to vest my GERP 2004 as well as ex[ercise] my Oct 06 stock options." App. 615. Moran's inquiry may have signaled her intent to exercise her stock options after their vesting date. However, we conclude that the record needs to be developed further as to what specific date Moran would have exercised her options, and, then accordingly, as to what would be an appropriate calculation of damages. Hence, we remand this claim to the District Court for further proceedings.

IV.

Accordingly, we will affirm the District Court's grant of summary judgment as to Moran's claims for retaliation and intentional infliction of emotional distress. We will vacate the District Court's grant of summary judgment as to Moran's breach of contract claim as it relates to her stock options and remand this claim to the District Court for further proceedings.